IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TELUS COMMUNICATIONS, INC.,<br><br>                    Plaintiff,<br><br>v.<br><br>SIGNATURE AVIATION SERVICES<br>CORPORATION,<br><br>                  Defendant. | Civil Action No. 25-1372-GBW |

Joseph S. Naylor, SWARTZ CAMPBELL LLC, Wilmington, DE; Daniel H.R. Laguardia, ALLEN OVERY SHEARMAN STERLING US LLP, San Francisco, CA; Emily Westridge Black, ALLEN OVERY SHEARMAN STERLING US LLP, Austin, TX.

*Counsel for Plaintiff*

Joe P. Yeager, MARGOLIS EDELSTEIN, Wilmington, DE.

*Counsel for Defendant*

**MEMORANDUM OPINION**

March 3, 2026
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Pending before the Court is the Motion of Defendant Signature Aviation Services Corporation ("Defendant") to Dismiss the Complaint Pursuant to Rule 12(b)(7), Forum Non Conveniens, and Rule 12(b)(6) ("Defendant's Motion"). (D.I. 6). Plaintiff Telus Communications, Inc. ("Telus" or "Plaintiff") opposes. (D.I. 10). Defendant's Motion has been fully briefed[1] (D.I. 6, Ex. 1; D.I. 10; D.I. 12). For the reasons set forth below, Defendant's Motion is DENIED.

## I.    **BACKGROUND**

On February 27, 2025, Plaintiff's employees "traveled from Boston Logan International Airport to Charlottesville-Albemarle Airport," in "a 2014 Gulfstream G550 corporate jet bearing tail number C-FTEL (the 'Aircraft')" and "landed in Charlottesville at approximately 3:08 p.m. local time." (D.I. 1 ¶¶ 8, 11). "Upon landing, the Aircraft taxied to [Defendant's] private terminal and was ushered by [Defendant's] employees to a parking space on a tarmac operated by [Defendant]." (Id. ¶ 12). "Once parked, [Defendant's] employees placed wheel chocks on all landing gear to prevent the Aircraft from moving." (Id. ¶ 13). Some time after Plaintiff's employees disembarked the aircraft, "[a]n Embraer 190 aircraft (the 'Embraer') subsequently landed at Charlottesville-Albemarle Airport and taxied to [Defendant's] private terminal," ultimately parking "105 feet from the Aircraft." (Id. ¶ 14).

---

[1] The Court notes that the parties' briefing is noncompliant with this District's local rules. First, Defendant's opening brief does not contain a table of contents, nor a table of authorities, as required by D. Del LR 7.1.3(c)(1)(A)-(B). (See D.I. 6, Ex. 1). Also, both Plaintiff's answering brief and Defendant's reply brief do not contain page numbers, also required by the local rules. (See D.I. 10; D.I. 12); see also D. Del. LR 5.1.1(a) ("Each page shall be numbered consecutively.").

"The passengers of the Embraer arranged transportation from the airport by a charter bus operated by" non-party Errands Plus Inc. d/b/a RMA Worldwide Chauffeured Transportation ("RMA") (D.I. 1 ¶ 15). "RMA dispatched its employee, 76-year-old Harold Benjamin [('Mr. Benjamin')], to pick up and transport the Embraer passengers." (*Id*.). "Mr. Benjamin had arrived at the airport before the Embraer, and he was sleeping in the bus at or near [Defendant's] terminal when the Embraer arrived." (*Id*.). "Upon arrival of the Embraer," an employee of Defendant, Chris Bolden ("Mr. Bolden"), woke Mr. Benjamin and escorted the bus to the Embraer, while another employee of Defendant, "Duane Herndon [('Mr. Herndon')], directed Mr. Benjamin to follow Mr. Bolden's escort vehicle to the Embraer." (*Id*. ¶ 16). "Under [Defendant's] direction and escort, Mr. Benjamin then drove the bus directly into the wing of the Aircraft, causing significant damage to the Aircraft." (*Id*. ¶ 17). "Either Mr. Bolden led Mr. Benjamin into the wing of the Aircraft, or Mr. Benjamin deviated from Mr. Bolden's indicated path and Messrs. Bolden and Herndon failed to stop him, causing the collision." (*Id*.).

## II.    **LEGAL STANDARDS**

### A.    **Rule 12(b)(7) Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(7) provides for dismissal for the plaintiff's "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). "For the purpose of Rule 12(b)(7), the court accepts as true the factual allegations of the complaint." *Util. Lines Const. Servs. Inc. v. HOTI, Inc.*, 799 F. Supp. 2d 331, 337 (D. Del. 2011) (citing *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 Fed. App'x. 803, 805 (3d Cir. 2003)).

A "Rule 19 analysis is a two-step process." *Culinary Serv. of Delaware Valley, Inc. v. Borough of Yardley, Pa*, 385 F. App'x 135, 145 (3d Cir. 2010) (citing *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007)). "First, under Rule 19(a), a district court

considers whether a party is necessary to an action." *Guthrie Clinic, Ltd. v. Travelers Indem. Co. of Ill.*, 104 F. App'x 218, 221 (3d Cir. 2004). "If a party is deemed necessary, then joinder must occur if feasible." *Id.* "If they should be joined, but their joinder is not feasible inasmuch as it would defeat diversity of citizenship" the court "next must determine whether the absent parties are 'indispensable' under Rule 19(b)." *Gen. Refractories*, 500 F.3d at 312. "A holding that joinder is compulsory under Rule 19(a) is a necessary predicate to" making a "determination under Rule 19(b)." *Culinary Serv.*, 385 F. App'x at 145 (citing *Gen. Refractories*, 500 F.3d at 313).

**B.    <u>Forum *Non Conveniens*</u>**

Under the doctrine of forum *non conveniens*, "a federal district court may dismiss an action on the ground that a" different "court . . . is the more appropriate and convenient forum for adjudicating the controversy." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). It is the movant's burden to demonstrate that a dismissal for forum *non conveniens* is warranted. *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1226 (3d Cir. 1995).

The Court's analysis under the doctrine of forum *non conveniens* "proceeds in three steps." *Behrens v. Arconic, Inc.*, Nos. 21-1040, 21-1041, 2022 WL 2593520, at *2 (3d Cir. July 8, 2022). First, the Court "must determine whether there is an adequate alternate forum to hear the plaintiff's claims." *Id.* (citing *Trotter v. 7R Holdings LLC*, 873 F.3d 435, 442 (3d Cir. 2017)). Second, the Court "must decide the degree of deference due to the plaintiff's forum choice." *Id.* (citing *Trotter*, 873 F.3d at 442). Third, the Court "must 'balance the relevant private and public interest factors' to determine whether it would be more appropriate and convenient for the parties to proceed in the alternate forum." *Id.* (quoting *Trotter*, 873 F.3d at 442).

"The private interest factors include: access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing

4

witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Trotter*, 873 F.3d at 442 (cleaned up) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). "The public interest factors include: the possibility of turning courts into congested centers; the likelihood that the case will burden a jury composed of people with no relation to the litigation; the probability that the case will touch the affairs of many persons in the community; and the chances that the court will be at home with the law that must govern the case." *Id.* (cleaned up) (quoting *Gulf Oil Corp.*, 330 U.S. at 508-09).

### C.    Rule 12(b)(6) Motion to Dismiss

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). But the Court will "disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016)).

In evaluating a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v.*

5

*Rhodes*, 416 U.S. 232, 236 (1974)).  Rule 12(b)(6) requires the Court to "accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff." *Brady v. Static Media*, Civ. No. 23-1078-GBW, 2024 WL 4103719, at *2 (D. Del. Sep. 6, 2024).  "A motion to dismiss 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Burlington Coat Factory*, 114 F.3d at 1420).  The "movant bears the burden of demonstrating that the complainant failed to state a claim upon which relief may be granted." *Abbott Diabetes Care, Inc. v. DexCom, Inc.*, C.A. No. 23-239 (KAJ), 2024 WL 2804703, at *1 (D. Del. May 31, 2024).

## III.    DISCUSSION

Defendant moves to dismiss the Complaint on three distinct grounds: failure to join a necessary party pursuant to Rule 12(b)(7), the doctrine of forum *non conveniens*, and failure to state a claim pursuant to Rule 12(b)(6).  (D.I. 6, Ex. 1 at 7-13).  The Court will discuss each in turn.

### A.    The Court Denies the Motion to Dismiss the Complaint Pursuant to Rule 12(b)(7)

Defendant asserts that RMA is a necessary party to this action and, because it was not joined, dismissal is proper under Rule 12(b)(7).  (D.I. 6, Ex. 1 at 7-9).  In Defendant's view, RMA played a central role in the incident giving rise to this action, as evidenced by Plaintiff's own pleading.  (*Id.* at 8).  Defendant contends that, because Plaintiff filed suit in Delaware, and with RMA potentially not being subject to this Court's jurisdiction, Defendant is unable to "secure complete relief" and RMA is a necessary party under Rule 19(a)(1)(A).  (*Id.*).

Defendant also asserts that litigating without RMA's participation could "expose[] the existing parties to a substantial risk of double or inconsistent obligations," and therefore RMA is

6

also a necessary party under Rule 19(a)(1)(B). (D.I. 6, Ex. 1 at 8). Defendant contends that, if

found liable, Defendant "would pursue contribution or indemnity against RMA." (*Id.* at 9).

Moreover, Defendant postulates that, if Plaintiff prevailed, it could "reasonably pursue RMA

directly for the same alleged loss." (*Id.*). Defendant further alleges that, if Plaintiff ultimately

prevails in this action, "RMA could argue . . . that it is not bound by findings in a case to which it

was not a party, preventing [Defendant] from . . . recovering contribution or indemnity for conduct

[Plaintiff] attributes to RMA's employee[s]." (*Id.*).

Plaintiff disagrees. Plaintiff asserts that, because Delaware and Virginia "apply joint and

several liability where . . . the conduct of two or more persons caused a single injury," joinder is

not required. (D.I. 10 at 8). Moreover, in Plaintiff's view, Defendant cannot be prejudiced

because, where joint and several liability is present, Plaintiff can choose from among those liable

to pursue recovery of all damages. (*Id.* at 8-9). Further, Plaintiff alleges that the bulge rule would

allow Defendant to join RMA as a party, mitigating all Defendant's concerns. (*Id.* at 9).

The Court agrees with Plaintiff. Federal Rule of Civil Procedure 19(a)(1)(A) states that:

"[a] person who is subject to service of process and whose joinder will not deprive the court of

subject-matter jurisdiction must be joined as a party if: in that person's absence, the court cannot

accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). The Third Circuit

has squarely addressed this issue in *General Refractories Co. v. First State Insurance Co.*, 500

F.3d 306 (3d Cir. 2007). In *General Refractories*, the Third Circuit instructed that the relevant

inquiry is whether the court "can grant complete relief to persons already named as parties to the

action," and further, that the "effect a decision may have on absent parties is immaterial." 500

F.3d at 313 (citing *Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 705 (3d Cir. 1996)).

Under that guidance, the *General Refractories* court held "that where liability is joint and several

among multiple parties, a court may grant complete relief with respect to any one of them . . . ." *Id.* at 314 (citing *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 406 (3d Cir. 1993)). In support, the *General Refractories* court pointed to the advisory committee's notes to Rule 19, which explicitly stated that "the description [of persons to be joined under subdivision (a)] is not at variance with the settled authorities holding that a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability." *Id.* (quoting Fed. R. Civ. P. 19 advisory committee's notes) (alteration in original). If Defendant was correct, then "all tortfeasors who could be jointly and severally liable should be joined if feasible," which both the First and Third Circuits have rejected. *Janney*, 11 F.3d at 409, *accord, Pujol v. Shearson/American Express, Inc.*, 877 F.2d 132, 136 (1st Cir. 1989) ("The mere fact, however, that Party A, in a suit against Party B, intends to introduce evidence that will indicate that a non-party, C, behaved improperly does not, by itself, make C a necessary party.").

Importantly, Defendant does not address *General Refractories*. (*See* D.I. 6, Ex. 1; D.I. 12). Instead, Defendant attempts to assert that the absence of RMA and Mr. Benjamin[2] from this litigation precludes Defendant from obtaining complete relief. (D.I. 12 at 3). In light of binding Third Circuit precedent stating that the proper inquiry is whether "complete relief [can be granted as] to persons already named as parties to the action," Defendant's argument fails. *Gen. Refractories*, 500 F.3d at 313. Moreover, Defendant's concerns about being subject to piecemeal

---

[2] In reply, Defendant appears to assert, for the first time, that Mr. Benjamin is also a necessary party to this action. (D.I. 12 at 3-5). Because Defendant raises this argument for the first time in reply, the argument is waived. *In re Niaspan Antitrust Litig.*, 67 F.4th 118, 135 (3d Cir. 2023) ("Arguments raised for the first time before a district court in a reply brief are deemed forfeited."); D. Del LR 7.1.3(c)(2). Moreover, Defendant's assertion that Mr. Benjamin is necessary to be joined in this action fails on the merits for the reasons stated above with respect to RMA.

litigation fare no better, as "the fact that the public might be subject to 'repeated suits on the same

subject matter' . . . poses no bar to [a court's] conclusion that" jointly and severally liable parties

are not "necessary" under Rule 19(a)(1)(A).  *Id.* at 315.  Thus, the Court concludes that RMA and

Mr. Benjamin are not "necessary" parties under Rule 19(a)(1)(A).

Defendant's arguments under Rule 19(a)(1)(B) also fail.  Federal Rule of Civil Procedure

19(a)(1)(B) states, in relevant part, that:

> A person who is subject to service of process and whose joinder will
> not deprive the court of subject-matter jurisdiction must be joined as
> a party if . . . that person claims an interest relating to the subject of
> the action and is so situated that disposing of the action in the
> person's absence may . . . leave an existing party subject to a
> substantial risk of incurring double, multiple, or otherwise
> inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(B).  Here, Defendant's bare assertion that it would be prevented "from

effectively recovering contribution or indemnity for conduct [Plaintiff] attributes to RMA's

employee[s]," (D.I. 6, Ex. 1 at 9), does not meet its burden.  An inability to recover contribution

or indemnity for a tort that Defendant is jointly and severally liable for is not "the double liability

that Rule 19(a)[(1)(B)] refers to."  *Janney*, 11 F.3d at 411.  To the contrary, "[t]he possibility that

[Defendant] may bear the whole loss if it is found liable is not the equivalent of double liability,"

but instead is "a common result of joint and several liability . . . ."  *Id.* at 412.

Importantly, Defendant does not address *Janney*, which squarely addresses its argument

regarding the potential for double or inconsistent obligations.  The Court is therefore persuaded

that RMA and Mr. Benjamin are not necessary parties under Rule 19(a), and thus the Court does

not proceed to an analysis under Rule 19(b).  *See Culinary Serv*, 385 F. App'x at 145 ("A holding

that joinder is compulsory under Rule 19(a) is a necessary predicate to" making a "determination

9

under Rule 19(b).""). Accordingly, Defendant's Motion to Dismiss pursuant to Rule 12(b)(7) is denied.

**B.    The Court Denies the Motion to Dismiss the Complaint Pursuant to Forum**
**     *Non Conveniens***

Defendant next contends the Complaint should be dismissed based on the doctrine of forum *non conveniens*. (D.I. 6, Ex. 1 at 9-10). In support, Defendant asserts that "[t]he incident occurred entirely in Virginia, and all key witnesses are located there." (*Id.* at 9). Moreover, Defendant posits that it "is not aware of any witnesses or material evidence located in or connected to Delaware in any way." (*Id.*). In Defendant's view, because "Plaintiff's choice of forum appears to lack any legitimate nexus to the underlying events, . . . the balance strongly favors adjudication in Virginia," and, thus, "dismissal is appropriate." (*Id.* at 10).

Plaintiff disagrees. In defending its choice of forum, Plaintiff asserts that Defendant "has entirely failed to meet its burden" under the doctrine of forum *non conveniens*. (D.I. 10 at 12). Plaintiff contends that, despite the witnesses and material evidence being located in Virginia, Defendant has not explained "why, given the availability of remote depositions and electronic record-keeping and discovery, it would be disproportionately oppressive and vexatious for it to litigate in Delaware . . . ." (*Id.*).

The Court agrees with Plaintiff. "The doctrine of forum *non conveniens* embodies the principle that, although a plaintiff's choice of forum should rarely be disturbed, when an alternative forum has jurisdiction to hear the case, and when trial in the plaintiff's chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or when the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems, the court may, in the exercise of its sound discretion, dismiss the case." *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 210 n.8 (3d Cir. 2016)

(quoting *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013)) (cleaned up). "It is settled that the defendant bears the burden of persuasion as to all elements of the forum *non conveniens* analysis." *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43-44 (3d Cir. 1988) (citation omitted) ("*Lacey I*"). "The moving defendant must show that an adequate alternative forum exists as to all defendants and, if so, that the private and public interest factors weigh heavily on the side of dismissal." *Id.*

As an initial matter, the Court holds that Defendant has fallen *far short* of meeting its burden. As Plaintiff identifies, Defendant does not discuss the private and public interest factors the Third Circuit has identified as relevant when considering a motion to dismiss pursuant to forum *non conveniens*. (D.I. 10 at 12). Instead, Defendant simply posits that, because the key witnesses are located in Virginia, it has overcome the "strong presumption in favor of the plaintiff's choice of forum . . . ." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981); (*see also* D.I. 6, Ex. 1 at 9-10). The Court disagrees. Defendant's single assertion is not enough for this Court to find that "the private and public interest factors weigh heavily in favor of dismissal." *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir. 1991) ("*Lacey II*"). Defendant, in its reply brief, attempts to defend its choice to provide the Court with a "cursory analysis" of the forum *non conveniens* factors because, in its view, such "a cursory analysis of those select factors necessitates dismissal." (D.I. 12 at 6). Given the high burden that Defendant has to meet to show that dismissal is warranted under the doctrine of forum *non conveniens*, the Court disagrees. In its reply brief, Defendant does conduct a more fulsome analysis of the forum *non conveniens* factors. (D.I. 12 at 6-8). However, given Defendant's high burden, such an analysis "should have been included in a full and fair opening brief," and any arguments Defendant makes for the first time in its reply brief on this issue

are waived. D. Del. LR 7.1.3(c)(2). Nonetheless, the Court will conduct a fulsome forum *non conveniens* analysis.

             1.      <u>Virginia is an Adequate Forum to Hear Plaintiff's Claims</u>

Neither party disputes that Virginia is an adequate forum to hear Plaintiff's claims. (*Compare* D.I. 6, Ex. 1 (asserting that Plaintiff should refile its claims in Virginia), *with* D.I. 10 at 10-16 (Plaintiff not disputing that Virginia is an adequate forum to hear its claims)). Thus, the Court concludes that Virginia is an adequate forum to hear Plaintiff's claims and proceeds to the next step of the analysis.

             2.      <u>Under the Circumstances, Plaintiff is Accorded Slightly Lower Deference in its Choice of Forum</u>

"Ordinarily, a domestic plaintiff's choice of forum enjoys 'a strong presumption of convenience' . . . ." *Wilmot v. Marriott Hurghada Mgmt., Inc.*, 712 F. App'x 200, 203 (3d Cir. 2017) (quoting *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 190 (3d Cir. 2008)). However, "the touchstone inquiry regarding the level of deference owed a plaintiff's choice of forum is not the 'citizenship or residence of the parties,' but the convenience of the forum." *Kisano*, 737 F.3d at 875 (quoting *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 73 (2d Cir. 2003)). Here, Plaintiff has made no assertion that litigating in Delaware is more convenient than litigating in Virginia. (*See* D.I. 10 at 10-16). Moreover, "[w]here, as here, 'the operative facts of a lawsuit occurred outside the forum selected by plaintiff,' the plaintiff's choice of forum is entitled to 'less deference.'" *Dialight Corp. v. Allen*, C.A. No. 15-1090 (FLW) (LHG), 2015 WL 5996287, at*5 (D.N.J. Oct. 14, 2015) (quoting *Danka Funding, L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465, 475 (D.N.J. 1998)) (ruling on a motion to transfer under 28 U.S.C. § 1404(a)); *see also Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 60 (2013) ("Section 1404(a) is merely a codification of the doctrine of forum *non conveniens* for the

subset of cases in which the transferee forum is within the federal court system . . . ."). Thus, the

Court concludes that Plaintiff should be awarded greater deference than a foreign plaintiff, but less

deference than a plaintiff located in Delaware or where the operative facts giving rise to the action

occurred in Delaware. In other words, the Court concludes that Plaintiff's choice of forum should

be awarded substantial deference, but less deference than other plaintiffs whose cases have a

stronger Delaware nexus.

       3.    **The Private and Public Interest Factors Weigh Against Dismissal Based on Forum *Non Conveniens***

Having decided that Virginia is an adequate forum and the proper deference that Plaintiff's

choice of forum is entitled to, the Court now turns to the private and public interest factors of

forum *non conveniens*.

       a.    **The Private Interest Factors Relevant to Forum *Non Conveniens* Weigh Only Slightly in Favor of Dismissal**

The private interest factors courts must consider in determining whether to dismiss a case

based on forum *non conveniens* include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Lacey I*, 862 F.2d at 46 (quoting *Gilbert*, 330 U.S. at 508). "In examining the relative ease of

access to sources of proof, and the availability of witnesses," courts "must scrutinize the 'substance

of the dispute between the parties to evaluate what proof is required, and determine whether the

pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action

and to any potential defenses to the action.'" *Id.* (quoting *Van Cauwenberghe v. Biard*, 486 U.S.

517, 528 (1988)). The Court will discuss each in turn.

          i.     Private Interest Factor 1: the Relative Ease of Access to Sources of Proof [Neutral]

The first private interest factor concerns "the relative ease of access to sources of proof . . . ." *Lacey I*, 862 F.2d at 46. It is true that "courts have noted that given the state of technology and electronic discovery, it is unlikely that parties would be unable to produce documents in an alternative forum." *Downing v. Globe Direct LLC*, C.A. No. 09-693 (JAP), 2010 WL 2560054, at *2 n.1 (D. Del. June 18, 2010) (citation omitted). However, although "Plaintiff is correct that technology makes the physical location of documents relatively unimportant, the fact remains that neither party has identified any relevant documents that are located in Delaware, while some such documents are evidently located in" Virginia. *Tradimpex Egypt Co. v. Biomune Co.*, 777 F. Supp. 2d 802, 810 (D. Del. 2011). Thus, on balance, this factor is neutral.

          ii.     Private Interest Factor 2: the Availability of Compulsory Process for Attendance of Unwilling, and the Cost of Obtaining Attendance of Willing, Witnesses [Weighs Slightly in Favor of Dismissal]

The second private interest factor concerns the "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses . . . ." *Lacey I*, 862 F.2d at 46. Defendant does not rebut Plaintiff's assertion that compulsory process is available for unwilling witnesses. (*Compare* D.I. 10 at 13 ("Any concern regarding the availability of compulsory process for the out-of-state witnesses is unfounded"), *with* D.I. 12 at 7 (not addressing compulsory process)). Instead, Defendant merely contends that, because all witnesses who are expected to testify reside in Virginia, this factors weighs in its favor. (D.I. 12 at 7). The Court agrees. Although Plaintiff points to tools such as remote depositions and the ease of travel between Virginia and Delaware, it is still the case that all witnesses expected to testify are located in Virginia. (*Compare* D.I. 12 at 7 (Defendant asserting that all witnesses expected to testify are

located in Virginia), *with* D.I. 10 at 13 (Plaintiff not asserting otherwise)). Thus, this factor weighs in favor of dismissal, albeit only slightly, given the aforementioned mitigating factors.

> iii.    Private Interest Factor 3: the Possibility of View of Premises, if View Would be Appropriate to the Action [Weighs Slightly in Favor of Dismissal]

The third private interest factor concerns the "possibility of view of premises, if view would be appropriate to the action . . . ." *Lacey I*, 862 F.2d at 46. Plaintiff contends this factor is not relevant, as "the Aircraft is no longer at the Charlottesville-Albermarle Airport" and that is unlikely that the "premises are in the same condition as when the accident occurred nearly a year ago . . . ." (D.I. 10 at 13-14). Defendant, in response, asserts that "the tarmac layout, parking configurations, lighting, signage, and operational procedures at the premises remain critical evidence." (D.I. 12 at 8). The Court agrees with Defendant. Although the Court believes evidence such as pictures, videos, schematics, and witness testimony may mitigate the need to view the premises, such a view "may be helpful, but can only happen in" Virginia. *Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400, 412 (D. Del. 2002).

> iv.    Private Interest Factor 4: All Other Practical Problems that Make Trial of a Case Easy, Expeditious and Inexpensive [Neutral]

Neither side has identified any additional problems that would warrant (or discourage) dismissal of the Complaint due to forum *non conveniens*. (*Compare* D.I. 10 at 14 ("There are no practical problems that favor jurisdiction in Virginia over Delaware."), *with* D.I. 12 (not identifying any additional factors)). Therefore, this factor is neutral.

> **b.    The Public Interest Factors Relevant to Forum *Non Conveniens* Weigh Against Dismissal**

The public interest factors relevant to analyzing whether dismissal based on forum *non conveniens* is warranted are:

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper*, 454 U.S. at 241 n.6 (quoting *Gilbert*, 330 U.S. at 508). "In evaluating the public interest factors the district court must 'consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum.'" *Lacey I*, 862 F.2d at 48 (quoting *Van Cauwenberghe*, 486 U.S. at 528). The Court will discuss each in turn.

      i.      Public Interest Factor 1: the Administrative Difficulties Flowing from Court Congestion [Neutral]

The first public interest factor is "the administrative difficulties flowing from court congestion . . . ." *Piper*, 454 U.S. at 241 n.6. For the 12-month period ending on December 31, 2025, Delaware had 561 pending cases per active judgeship and a median time of 9.4 months from filing to disposition for civil cases. *U.S. District Courts – Combined Civil and Criminal Federal Court Management Statistics – Profiles*, U.S. Courts (Dec. 31, 2025), https://www.uscourts.gov/data-news/data-tables/2025/12/31/federal-court-management-statistics/n-a-1, [https://perma.cc/2P9G-MRCE]. During the same 12-month period, the Western District of Virginia had 431 pending cases per active judgeship and a median time of 9.1 months from filing to disposition for civil cases. *Id.* The difference between the caseloads and time to disposition of the two potential forums, Delaware and Virginia, are insubstantial. Thus, the Court finds this factor to be neutral.

   ii. Public Interest Factor 2: the Local Interest in Having Localized Controversies Decided at Home [Weighs Against Dismissal]

The second public interest factor is the "local interest in having localized controversies decided at home . . . ." *Piper*, 454 U.S. at 241 n.6. "First, where damages or injuries are sustained in a specific locale, then public interest will support the location of the case in that locale." *IND Holding, Inc. v. ReachOut Tech. NE, Holdings, LLC*, C.A. No. 24-1351, 2025 WL 2426683, at *8 (D. Del. Aug. 22, 2025) (citing *McCraw v. GlaxoSmithKline*, No. 12-2119, 2014 WL 211343 at *6 (E.D. Pa. Jan. 17, 2024)). However, "Delaware has an interest in regulating the conduct of entities formed under its laws, and this public interest can weigh against granting forum *non conveniens* relief." *Id.* (quoting *GXP Capital, LLC v. Argonaut Manufacturing Services, Inc. et. Al.*, 234 A.3d 1186, 1198 (Del. 2020)). Here, Defendant is a Delaware corporation, (D.I. 1 ¶ 3), and, as such, Delaware has an interest in regulating Defendant's conduct. Thus, the Court finds this factor to weigh against dismissal.

   iii. Public Interest Factor 3: the Interest in Having the Trial of a Diversity Case in a Forum that is at Home with the Law that Must Govern the Action [Neutral]

The third public interest factor is "the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action . . . ." *Piper*, 454 U.S. at 241 n.6. There is a dispute as to whether Delaware or Virginia law governs this action. (*Contrast* D.I. 10 at 15 (Plaintiff "is of the opinion that Delaware law controls"), *with* D.I. 12 at 9 ("Virginia law will govern the substantive negligence claims.")). However, "it is not necessary for the Court to rule conclusively on the issue of whether" Delaware or Virginia "substantive law applies to this case." *Smith v. Resort Condominiums Int'l Inc.*, C.A. No. 07-437 (HAA), 2008 WL 11383868, at *5 (D.N.J. July 17, 2008). Plaintiff contends that both Delaware and Virgina "apply joint and

17

several liability," as well as have "the same approaches to negligence and gross negligence." (D.I. 10 at 15). Defendant does not contend there is a conflict between the laws of Delaware and Virginia relevant to the claims at issue. (*See* D.I. 6, Ex. 1; D.I. 12). As such, the Court concludes that there is no conflict of law issue and, thus, this factor is neutral. *See Rimmax Wheels LLC v. RC Components, Inc.*, 477 F. Supp. 2d 670, 674 n.12 (D. Del. 2007) ("[T]he court need not address choice of law" when there is no material difference between the substantive law of two states).

iv. Public Interest Factor 4: the Avoidance of Unnecessary Problems in Conflict of Laws [Neutral]

As discussed *supra* § III(B)(3)(b)(iii), there is no alleged material difference between the substantive law of Virginia and Delaware relevant to the claims at issue in this action. Thus, this factor is neutral.

v. Public Interest Factor 5: the Unfairness of Burdening Citizens in an Unrelated Forum with Jury Duty [Weighs Against Dismissal]

As discussed above, both Virginia and Delaware have an interest in deciding this dispute. *See supra* § III(B)(3)(b)(ii). Additionally, given the lack of an alleged conflict of law between Delaware and Virginia relevant to the claims in this action, "the burden on a Delaware jury is no greater than the burden would be on jurors elsewhere." *Tradimpex Egypt Co. v. Biomune Co.*, 777 F. Supp. 2d 802, 810 (D. Del. 2011). Thus, this factor weighs against dismissal.

c. **Defendant Has Failed to Overcome the Presumption Accorded to Plaintiff's Choice of Forum**

In sum, two of the private interest factors weigh slightly in favor of dismissal, two of the public interest factors weigh against dismissal, and the other five private and public interest factors are neutral. The Court also is cognizant of the substantial deference that a domestic Plaintiff's choice of forum is entitled, albeit lessened under the circumstances in this action. *See supra*

18

§ III(B)(2).  In fact, "unless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (citation omitted) (emphasis added).  Thus, after balancing the private and public interest factors and the deference given to Plaintiff's choice of forum, Defendant's Motion to Dismiss on the grounds of forum *non conveniens* is denied.

### C.    The Court Denies the Motion to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6)

Defendant next moves this Court to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  According to Defendant, "the Complaint fails to allege any actionable breach of duty by" Plaintiff.  (D.I. 6, Ex. 1 at 11).  Moreover, Defendant also asserts that its "custody" of the aircraft does not create a tort duty under Virginia law.  (*Id.*).

Plaintiff disagrees.  In Plaintiff's view, Defendant did owe Plaintiff "a duty of care in operating its private terminal and providing parking for the Aircraft." (D.I. 10 at 17).  Additionally, Plaintiff contends that, accepting the facts pled in the Complaint as true, Defendant "breached its duty of care under both Delaware and Virginia law." (*Id.* at 18).

In order to state a claim for negligence, Virginia law[3] requires the plaintiff "to show the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage." *McGuire v. Hodges*, 273 Va. 199, 205-06 (2007) (quoting *Atrium Unit Owners Ass'n v. King*, 266 Va. 288, 293 (2003)).  The Court will take each element in turn.

---

[3]    As stated *supra* § (III)(B)(3)(b)(iii), there is a disagreement as to whether Virginia or Delaware law applies.  (*Contrast* D.I. 10 at 15 (Plaintiff "is of the opinion that Delaware law controls"), *with* D.I. 12 at 9 ("Virginia law will govern the substantive negligence claims.")).  However, because Defendant asserts Virginia law applies, and Defendant asserts there is no difference between Virginia law and Delaware law, the Court will cite to Virginia law for the purpose of resolving the Rule 12(b)(6) portion of Defendant's Motion.

1.    <u>Under the Facts Pled, Defendant Owed a Legal Duty to Plaintiff</u>

First, it is unclear whether the parties agree that a legal duty exists under the pled set of

facts. (*Contrast* D.I. 6, Ex. 1 at 11 (Plaintiff's "references to [Defendant's] 'custody' of the

Aircraft at the time of the incident do not create a tort duty under Virginia law."), *with* D.I. 10 at

17 (Defendant "does not dispute that it owed any such duty to" Plaintiff), *and* D.I. 12 (Defendant's

reply failing to address whether it had a legal duty)).  For the avoidance of doubt, the Court holds

that, under the facts pled, Defendant did owe Plaintiff a legal duty to care for the Aircraft.

"The question whether a duty of care exists in a negligence action is a pure question of

law." *Burns v. Johnson*, 250 Va. 41, 45 (1995) (citing *Fox v. Custis*, 236 Va. 69, 74 (1988)).  In

order to determine if a duty exists, the Court must ask whether, under Virginia common-law

precedents, "tort liability may be imposed upon a" person who negligently stores the aircraft of

another, resulting in damage to said aircraft. *Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 80

(2019).  Under the circumstances of this case, the Court concludes that the answer is yes.

Most illustrative, in the Court's view, are the duties imposed by a bailor/bailee relationship

under Virginia common law.  "A bailment has been broadly defined as 'the rightful possession of

goods by one who is not the owner.'" *K-B Corp. v. Gallagher*, 218 Va. 381, 384 (1977) (quoting

9 S. Williston, Contracts 875 (3rd ed. 1967)).  "Ordinarily, for a bailment to arise there must be a

delivery of the chattel by the bailor and its acceptance by the bailee." *Id.* (citing *Crandall v.

Woodard*, 206 Va. 321, 327 (1965)).  However, "no particular formality or actual meeting of the

minds is necessary to establish the relationship; 'it is the element of lawful possession, however

created, and duty to account for the thing as the property of another that creates the bailment,

regardless of whether or not such possession is based on contract in the ordinary sense.'" *Id.*

(quoting *Crandall*, 206 Va. at 327). Possession requires "physical control over the thing possessed, and an intent to exercise that control." *Id.* (cleaned up).

In the instant case, Plaintiff has pled that Defendant's "employees placed wheel chocks on all landing gear to prevent the Aircraft from moving," and that Plaintiff's personnel "disembarked from the aircraft and departed the airport, leaving the Aircraft in [Defendant's] exclusive custody and control." (D.I. 1 ¶ 13). These facts are sufficient for the Court to infer that a bailment over the Aircraft was created, with Plaintiff as the bailor and Defendant as the bailee. *See K-B Corp.*, 218 Va. at 384. Moreover, Plaintiff has pled that Defendant "is a fixed-based operator that operates a network of private aviation terminals, with more than 200 locations internationally;" and that Defendant "provides long-term hangar space for corporate aircraft" as well as "offers short-term parking solutions for aircraft in travel." (D.I. 1 ¶ 9). Given the facts that Plaintiff pled regarding Defendant's business, the Court is able to infer that Plaintiff paid Defendant to store the Aircraft, making Defendant a compensated bailee in this circumstance. Therefore, Defendant owed Plaintiff "a duty of reasonable or ordinary care" in its handling of the Aircraft. *Morris v. Hamilton*, 225 Va. 372, 375 (1983) (citing *Dawson v. Fusco's Auto Service*, 178 Va. 350, 353 (1941)).

> 2. Plaintiff has Pled Facts Allowing the Court to Infer that Defendant Breached its Duty of Care Owed to Plaintiff

In a negligence action, "[i]f the allegations are legally sufficient to establish a duty as a matter of law, then it becomes a matter for the jury, upon the evidence, to 'determine[ ] whether the duty has been performed.'" *Yuzefovsky v. St. John's Wood Apartments*, 261 Va. 97, 106 (2001) (second alteration in original) (quoting *Acme Markets, Inc. v. Remschel*, 181 Va. 171, 178 (1943)). In alleging breach of duty, Plaintiff has pled that Defendant instructed the Embraer to park "only 105 feet from the Aircraft." (D.I. 1 ¶ 14). Plaintiff has also pled that "Mr. Bolden led Mr. Benjamin into the wing of the Aircraft," or alternatively, that the failure of Messrs. Bolden and

Herndon to stop Mr. Benjamin from running into the wing of the Aircraft caused the collision. (*Id.* ¶ 17). "On a motion to dismiss, [the Court] draw[s] all reasonable inferences in favor of the plaintiff," *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 305 (3d Cir. 2005), and "accept[s] as true all factual allegations in the complaint," *Ray v. Kertes*, 285 F.3d 287, 291 (3d Cir. 2002). In the Complaint, Plaintiff pled that Defendant parked the Embraer 105 feet from the Aircraft, which, when making all reasonable inferences in favor of Plaintiff, could be considered too close as to breach a duty of care. (*See* D.I. 1 ¶ 14); *see also Rowinski*, 398 F.3d at 305. Additionally, Plaintiff pled that an employee of Defendant led Mr. Benjamin into the wing of the Aircraft, or Messrs. Bolden and Herndon failed to stop Mr. Benjamin, with a reasonable inference being they were in a position to do so. (D.I. 1 ¶ 17). Defendant does not cite to a single case suggesting that any of these actions could not be considered a breach of the legal duty it owed Plaintiff. Given the factual nature of the inquiry, a jury could find a breach of duty by Defendant. Thus, the Court finds that Plaintiff has adequately pled that Defendant breached its duty owed to Plaintiff in handling the aircraft.

3.    Plaintiff has Pled Facts Allowing the Court to Find Proximate Cause/Standing

Defendant does not challenge whether Plaintiff has pled proximate cause for damages in alleging Plaintiff has not sufficiently pled its negligence claim. (*See* D.I. 6, Ex. 1 (not making any such argument); D.I. 12 (same)). Instead, Defendant contends that Plaintiff lacks standing to bring its claims, because Plaintiff has not alleged "a concrete injury that is fairly traceable to [Defendant's] conduct and likely to be redressed by a favorable ruling." (D.I. 6, Ex. 1 at 11-12). "Standing to sue in any Article III court is, of course, a federal question which does not depend on the party's prior standing in state court." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985) (citing *Doremus v. Board of Education*, 342 U.S. 429, 434 (1952)). "[F]ederal standing

requires an allegation of a present or immediate injury in fact, where the party requesting standing has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues.'" *Id.* (quoting *Doremus*, 342 U.S. at 434). Additionally, "[t]here must be some causal connection between the asserted injury and the challenged action, and the injury must be of the type 'likely to be redressed by a favorable decision.'" *Id.* (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982)).

Plaintiff has adequately alleged standing in this action. As explained above, Plaintiff pled, *inter alia*, that an employee of Defendant led Mr. Benjamin into the wing of the Aircraft. (D.I. 1 ¶ 17). Accepting that allegation as true, the Court is able to draw the inference that Defendant's employee, leading Mr. Benjamin into the Airplane, is a causal connection to the Airplane's damage sufficient to confer Article III standing on Plaintiff.

*      *      *

For the foregoing reasons, Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) is denied.

## IV.   CONCLUSION

For all the reasons set forth above, Defendant's Motion (D.I. 6) is DENIED. An appropriate Order will follow.